JUN 10 2024 PM2:31
FILED-USDC-CT-NEW HAVEN

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT "TIMOTHY.BENNIT" | Case No.   3:24MJ___513___ (MEG)  **Filed Under Seal** |

## AFFIDAVIT

I, Evan Poisson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent employed by the Federal Bureau of Investigation (FBI). As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7); that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in 18 U.S.C. § 2516.  I am employed as an FBI Special Agent since 2023. Currently, I am assigned to the New Haven Division of the FBI, where I have been tasked with investigating violent criminal street gangs and organized criminal enterprises involving the smuggling, distribution, and sale of illegal drugs. Prior to becoming an FBI Special Agent, I was a police officer for seven years. As a police officer, I investigated numerous violations of law, including drug distribution, violent street crimes, and firearms offenses. During my career in law enforcement, I have arrested and interviewed subjects of violent criminal street gangs. My training and experience as an FBI Special Agent, my experience as a police officer, and my conversations with other law enforcement officials familiar with violent crime and violations of federal narcotics laws form the basis of my conclusions set forth below, which I drew from the facts set forth herein.

2.     I have written and executed search warrants, which have resulted in the seizure of evidence of drug and firearms violations. I have participated in investigations involving individuals suspected of distributing illegal drugs in both state and federal investigations, coordinated

controlled purchases of illegal drugs utilizing confidential sources, and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs, and spoken to informants and subjects, as well as other local, state, and federal officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with the authority to execute federal search and arrest warrants.

3.      This affidavit is only intended to establish probable cause for the requested warrants and does not set forth all my knowledge about this matter. This affidavit is intended to show merely that there is sufficient probable cause for the issuance of the requested search warrants and does not set forth all my knowledge about this matter.

## REQUEST

4.      Based on the facts set forth in this affidavit, there is probable cause to believe, and I do believe, that violations of Title 18, United States Code, § 933 (Trafficking in Firearms); (hereafter referred to as the "Target Offense") has been committed, is being committed, and will be committed by TIMOTHY GREGORY (hereafter, "GREGORY"), and others.

5.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account which is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., formally known as Facebook Inc. ("Facebook"), a social networking company headquartered in Melo Park, California. The information to be searched is described in the following paragraphs and in Attachments A. This affidavit is made in support of an application for a search warrant under 18 United States Code §§ 2701(a), 2701(b)(1)(A) and 2701(c)(1)(A) to require Meta Platforms, Inc., to disclose to the government copies of the information further described Attachment B. Upon receipt of the

2

information described in Section I of Attachments B, government-authorized persons will review the information to locate items described in Section II of Attachment B pertaining to the subscriber customer associated with the following user ID, **"timothy.bennit"** (hereafter, "TARGET ACCOUNT").

6.     The information to be searched is described in the following paragraphs and in Attachment A to the search warrant. This affidavit is also submitted in support of, and serves as, an application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and Sections 18 U.S.C. 2703(c)(1)(A) and 2711(3), authorizing agents to ascertain the physical location of the TARGET ACCOUNT, including but not limited to the primary location, last location, and any other geolocation, GPS, or other precise location information concerning the TARGET ACCOUNT, further described in Section I of Attachment B, (the "Requested Location Information"), for a period of thirty (30) days of the search warrant. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

7.     Because I am seeking the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices (pen-trap devices) to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the TARGET ACCOUNT.

8.     With regard to the aforementioned Pen Register information, this affidavit sets forth a) sufficient information to establish that there are reasonable grounds to believe that the

information likely to be obtained by the installation and use of a pen register device or process and a trap-and-trace device or process on the TARGET ACCOUNT is relevant to an ongoing investigation; and, b) sufficiently specific and articulable facts to establish that there are reasonable grounds to believe that the electronic communications records and/or information sought is relevant and material to an ongoing criminal investigation.

9.     With respect to the Requested Location Information, for the reasons set forth herein, there is probable cause to believe that the offenses listed below have been committed, are being committed, and will continue to be committed by the user of the TARGET ACCOUNT, as described more fully below. Moreover, there is probable cause to believe that the Requested Location Information will constitute or lead to evidence of these offenses, including but not limited to the location of places and persons associated with the illegal activities of the user of the TARGET ACCOUNT.

10.     I am familiar with the facts and circumstances of the investigation as a result of my personal participation in the investigation; from discussions with agents of the FBI and other law enforcement personnel; from information provided by witnesses involved in the investigation; and from my review of records, reports and affidavits relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. The information contained in this affidavit is based on this familiarity, and upon information which I have reviewed and determined to be accurate and reliable. Since this affidavit is being submitted for the limited purpose of the

aforementioned authorizations, I have not included each and every act known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the foundation necessary to support the issuance of the requested court orders.

### BACKGROUND & PROBABLE CAUSE

11.    The Federal Bureau of Investigation (FBI) New Haven Safe Streets Gang Task Force (SSGTF) is investigating the commission of the Target Offense by GREGORY, a.k.a. "Zombie." During April 2024, an FBI Confidential Human Source (hereafter "CHS-1"), reported that "Zombie" is willing to traffic firearms to Connecticut from the Arizona area. CHS-1 has a prior criminal history that involves convictions for Risk of Injury, Probation Violation, and Reckless Endangerment.  CHS-1 has been determined to be credible and reliable based on the ability of law enforcement to corroborate the information he/she provided.

12.    Investigators identified "Zombie" as GREGORY and determined that GREGORY was utilizing the TARGET ACCOUNT. The TARGET ACCOUNT is viewable by the public and GREGORY posted screenshots of his Venmo/Paypal accounts that carry the name "Timothy Gregory." Using various databases, investigators located a Colorado Driver's License photograph of GREGORY. Investigators confirmed that the Driver's License photograph matched the individual in the photographs posted from the TARGET ACCOUNT. On or around April 8, 2024, CHS-1 contacted GREGORY via Facebook messenger/Facebook video chat on the TARGET ACCOUNT and GREGORY discussed mailing firearms to CHS-1 through the United States Postal Service (USPS) to Connecticut. During these conversations, CHS-1 advised GREGORY that he/she is a convicted felon and therefore is a prohibited possessor. GREGORY indicated that he would still mail firearms to CHS-1 despite this fact. CHS-1 told investigators that the individual

in the photographs from the TARGET ACCOUNT is the individual who he spoke with via Facebook video chat.

13.     During May 2024, CHS-1 facilitated the purchase of a pistol from GREGORY at the direction of Agents. GREGORY mailed a package via USPS from a post office in New Mexico to a United States Postal Inspection Service (USPIS) mailing address provided by CHS-1 to GREGORY. GREGORY sent CHS-1 the tracking number from the TARGET ACCOUNT for the package and advised CHS-1 that it contained a handgun and three magazines.

14.     On or around May 14, 2024, investigators intercepted this package and examined the contents with USPIS Special Agents. The package contained a Glock 42 .380 caliber pistol and three magazines. CHS-1 contacted GREGORY at the TARGET ACCOUNT and told him that the package was received. CHS-1 thereafter facilitated the payment of $400 in U.S. Currency upon receipt of the pistol. CHS-1 met with a mutual associate of GREGORY in Connecticut and provided him with $400 in U.S. Currency. The mutual associate then paid GREGORY $400 through the Venmo mobile payment application. Investigators know that GREGORY uses a Venmo account with the username "@timmaaay1808" and the display name "Timothy Gregory." CHS-1 then provided investigators with a screenshot of the Venmo transaction, confirming that GREGORY received the $400 for the firearm. GREGORY told CHS-1 that he has more firearms for sale, specifically fully automatic weapons. GREGORY sent CHS-1 photographs of what appeared to be fully automatic weapons via Facebook messenger from the TARGET ACCOUNT.

15.     On or around May 15, 2024, CHS-1 contacted GREGORY at the TARGET ACCOUNT and told GREGORY that he/she is interested in purchasing fully automatic firearms. GREGORY stated that he could not send those through the mail and would instead drive them to Connecticut. GREGORY told CHS-1 that he will be driving to Connecticut to deliver

approximately seventy-five (75) pounds of marijuana to a friend within the next two months. GREGORY advised CHS-1 that he currently plans to drive from New Mexico to Connecticut with approximately seven automatic firearms and 75 pounds of marijuana.

## GENERAL INFORMATION IN CONNECTION TO THE REQUESTS

### A. General Information Regarding Facebook

16.     Meta is a United States company that owns and operates Facebook, a social media platform, and is a provider of electronic communications services and remote computing services as defined by 18 U.S.C. §§ 2711(2) and 3127(1).  Users can access Facebook and register for an account, like the target account listed in Attachment A, via its website (facebook.com) or via its mobile applications (Facebook and Messenger).  Each Facebook account is assigned a unique user ID number and may also be associated with a unique user-created username.  Users can periodically change their usernames but no two users can have the same username at the same time.

17.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

18.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can

exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

19.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

20.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

21.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a

user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by and user that have that user tagged in them.

22.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

23.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

24.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

25.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

26.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the

account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

27.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

28.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that user's access or use of that application may appear on the user's profile page.

29.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

30.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records or contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

31.     Facebook will collect information from computers, phones, or other devices used to install or access Facebook services, depending on the permissions the user granted. Facebook may collect attributes such as the operating system, hardware version, device settings, file and software names and types, battery and signal strength, and device identifiers. Facebook may also collect device locations, including specific geographic locations, such as through GPS, Bluetooth, or WiFi signals.

32.     Meta uses information about the location of its Facebook users for business purposes and to enhance the functionality of its platform, such as to personalize and target advertisements, display local news stories, suggest nearby events, and detect suspicious account activity.  Location determinations are informed by connection records, device-based data, and user-generated information.  Examples of data used by Meta to determine a user's location include IP addresses, Global Position System ("GPS") data, "check-ins," and event responses.  Meta also uses this data to estimate the city or town where the user is situated, which Meta refers to as the user's "Primary Location.

33.     Meta collects geolocation data, which it refers to as "precise location information," from a user's device if each of the following conditions are met.  First, the Facebook mobile application must be installed on the device.  Second, a user of that device must have granted "permission" through the device's operating system for the mobile application to receive and transmit location data to Meta.  Third, a user of that device must have enabled "location services" through the device's operating system.  Fourth, the mobile application must be logged into a Facebook account and, if required by the permission or other settings, be in active use.

34.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal

conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.

35.     Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and user relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

12

Therefore, the computers of Facebook are likely to contain all the material described herein, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

36.     This proposed search warrant seeks the historical and prospective production of geolocation information collected and retained by Facebook in the normal course of business. Meta produces geolocation data to law enforcement as datapoints consisting of a latitude, longitude, and timestamp.  According to Meta, it retains only one such datapoint for an account, with each subsequent datapoint replacing the prior.  Based on my training and experience, I know that Meta can produce that stored datapoint, which it refers to as "Last Location," and it can also produce subsequent datapoints on a rolling basis.

### B.   Technical Information Associated with Social Media Accounts and Location

37.     A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

38.     In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications, as described below. The Internet is a global network of computers and other devices. Devices directly connected to the Internet are identified by a unique number called an Internet Protocol, or "IP" address. This

number is used to route information between devices. Generally, when one device requests information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response. An IP address is analogous to a telephone number and can be recorded by pen-trap devices, and it indicates the online identity of the communicating device without revealing the communication's content. A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves. The equipment that connects a computer or other device to the network is commonly referred to as a network adapter. Most network adapters have a Media Access Control ("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number.

39.     An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers. Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter. Because the address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter. On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a header with routing and control information, and a payload, which generally contains user data. The header contains non-content information such as the packet's source and destination IP addresses and the packet's size. The different Internet applications are associated with different "port numbers," or numeric identifiers.

The port number is transmitted along with any communication using that application. For example, port 80 typically is associated with communications involving the World Wide Web.

## AUTHORIZATION REQUEST

40.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

41.     I further request that the Court direct Meta Platforms Inc., to disclose to the government any information described in Section I of Attachment B, respectively, that is within their possession, custody, or control.

42.     Because the warrant for the TARGET ACCOUNT will be served on Meta Platforms Inc., who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of those requested warrants at any time in the day or night.

43.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated.  provider . . . is located or in which the wire or electronic communications, records, or other information are stored.

44.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

45.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the

targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

**EVAN POISSON**

Digitally signed by EVAN POISSON
Date: 2024.06.10 10:48:07 -04'00'

EVAN POISSON
SPECIAL AGENT, FBI

Subscribed and sworn to me over the telephone or other reliable means on June 10, 2024

HON. MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE

16

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with the Facebook user IDs listed below that are stored at premises controlled by Meta Platforms Inc., a company headquartered in Menlo Park, California:

Facebook Account ID: **timothy.bennit**

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Meta Platforms, Inc. (Meta Platforms)**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta Platforms or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta Platforms is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.      The following information about the customers or subscribers of the Account, from the date the Account was created to the present, unless specified otherwise below:

1.      All contact and personal identifying information, for the accounts listed, including but not limited to name, address, phone number, etc.;

2.      All activity logs for the accounts listed and all other documents showing the user's posts and other Facebook activities, from April 03, 2024, to present.

3.      All photos and videos uploaded by the accounts listed and all photos and videos uploaded by any user that have the user of the accounts listed tagged, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos from April 03, 2024, to present.

4.      All profile information, news feed information, status updates, videos, photographs, articles, and other items, notes, wall postings, friend list, including the friends; Facebook user identification numbers, groups and networks of which the user is a member, including the groups' Facebook identification number, future and past event postings; rejected friend requests, comments, gifts, pokes, tags, and information about the user's access and use of Facebook applications;

5.      All records or other information regarding the devices and internet browsers associated with or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

6.      All other records and contents of communications and messages made or received by the listed accounts, from April, 03, 2024, to present, including

18

all messenger activity, private messages, chat history, video and voice calling history, and pending friend requests;

7. All "check-ins" and other location information;

8. All IP logs, including all records of the IP addresses that logged into the account;

9. All records of the account's usage of the like feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

10. All information about the Facebook pages that the account is or was a "fan" of;

11. All lists of friends created by the listed accounts from April 04, 2024, to present;

12. All records of Facebook searches performed by the listed accounts, from April 04, 2024, to present;

13. All information about the user's access and use of Facebook marketplace;

14. The types of service utilized by the user;

15. All accounts associated with the listed accounts by cookies;

16. Any GPS and/or location information associated with the listed accounts, from April 04, 2024, to present

17. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

18. All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

19. All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

B. The following location information:

1. Primary Location;

2. Last Location; and

3.   All geolocation information for a period of 30 days from the date of this search warrant, during all times of day and night.

***Prospective Pen-Trap Information*** - Pursuant to 18 U.S.C. § 3123, the FBI may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the TARGET ACCOUNT identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

a.   IP addresses associated with the cell phone device or devices used to send or receive electronic communications
b.   Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
c.   Identity of all accounts that are linked to the account by cookies
d.   Any unique identifiers associated with the cell phone device or devices used to make and receive calls/messages with the TARGET ACCOUNT, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
e.   IP addresses of any websites or other servers to which the cell phone device or devices connected
f.   Source and destination telephone numbers and email addresses

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Meta Platforms' services, including by initiating a signal to determine the location of the TARGET ACCOUNT on Meta Platforms' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

Meta Platforms Inc. is hereby ordered to disclose the above information to the government within up to 14 days of issuance of this warrant.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Title 18, United States Code, §§ 933 (Trafficking in Firearms) including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.   Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

b.  Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

c.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

d.  Prospective location and Pen-Trap information associated with the TARGET ACCOUNT.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.